FILED
99 JUL -6 PM 4: 35
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | | |
|---|---|---|
| JEROME O. BERNAUER, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No.   CV 98-J-1064-NW |
| | ) | |
| REYNOLDS METALS COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

ENTERED
JUL 0 7 1999

## MEMORANDUM OPINION

This cause comes before this Court on Defendant's motion for summary judgment (doc. 22).

### Undisputed Material Facts

Plaintiff, a male, was born on November 11, 1948. After obtaining a degree in civil engineering, Plaintiff was hired by Defendant in 1979 to work in the engineering department of the Alabama Reclamation Plant ("ARP"), one of three plants Defendant operated in Colbert County, Alabama. Plaintiff was initially hired as a project engineer, was transferred to maintenance engineering, and finally transferred back to a project engineer position. *Plaintiff's depo.* at 32. It is undisputed that the overwhelming portion of Plaintiff's work was mechanical engineering with occasional, "minor [electrical engineering] stuff". *Plaintiff's depo.* at 38, 159.

In or about 1991, Plaintiff was diagnosed with obstructive sleep apnea, a condition which interrupted his breathing and his sleep as often as fifty times per minute throughout

the night. As a result, Plaintiff was often drowsy during the workday. Additionally, Plaintiff had migraine headaches which occasionally were severe enough that he left work. Plaintiff underwent surgery for sleep apnea in 1992. The surgery did not completely alleviate the condition, and Plaintiff had additional surgery in 1996.[1]

Prior to July 1, 1996, Defendant operated ARP, the Southern Reclamation Company ("SRC"), and the Alloys Plant within a few miles of one another in Colbert County, Alabama. Each of these plants had its own engineering department. On June 14, 1996, Defendant notified its employees that its Colbert County operations would be reorganized into a single Alloys/ARP/SRC complex. *Plaintiff's depo.* at Defendant's Ex. 4. With the reorganization, the separate engineering departments at ARP and SRC ceased to exist, and engineering operations for the entire complex were subsequently handled by the Alloys engineering department. The reorganization resulted in a reduction in force ("RIF") throughout the Alloys/ARP/SRC complex. On July 16, 1996, Plaintiff was RIF'd at the age of 47.

On May 1, 1998, Plaintiff filed this suit alleging that Defendant violated the Americans with Disabilities Act ("ADA") and the Age Discrimination in Employment Act ("ADEA") by terminating him pursuant to the RIF (doc. 1). Plaintiff later amended his complaint to add a count for breach of contract due to what Plaintiff contends are violations of Defendant's own affirmative action policy (doc. 13).

---

[1]The later surgery is irrelevant to the analysis of Plaintiff's claims because it occurred after Plaintiff was terminated.

## Summary Judgment Standard

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since the complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp.* 477 U.S. at 322-23. The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrates the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to "go beyond the pleadings and by ... affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324, Fed. R. Civ. P. 56(e). In meeting this burden the nonmoving party "must do more than simply show that there is a metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed. R. Civ.

P. 56(c); *Matsushita*, 475 U.S. at 587, *see also Anderson*, 477 U.S. at 249. The non-movant must "demonstrate that there is indeed a material issue of fact precluding summary judgment." *Clark v. Clark & Coats, Inc.*, 929 F.2d 604, 608 (11th Cir.1991).

On motions for summary judgment, the court shall construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The substantive law will identify which facts are material and which are irrelevant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Id.* at 249. The basic issue before the court on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Holcombe v. Alabama Dry Dock & Shipbuilding*, 1998 WL 758012 (S.D. Ala.); citing *Anderson*, 47 U.S. at 251-252.

## Analysis

### I. *ADEA Claim*

Plaintiff contends that Defendant violated the Age Discrimination in Employment Act ("ADEA") when it terminated him. To establish a *prima facie* ADEA case, Plaintiff must

show "(1) that he was in a protected age group and was adversely affected by an employment decision; (2) that he was qualified for his current position or to assume another position at the time of discharge or demotion; and (3) evidence by which a fact finder might reasonably conclude that the employer intended to discriminate on the basis of age in reaching the decision at issue.... Where a particular job position is entirely eliminated for nondiscriminatory reasons, for plaintiff to prevail against his employer he must show that he was qualified for another available job with that employer; qualification for his current position is not enough." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1082-1083 (11th Cir. 1990) (citations omitted); *see also Watkins v. Sverdrup Technology, Inc.*, 153 F.3d 1308, 1314 (11th Cir. 1998). At the time he was RIF'd, Plaintiff was forty-seven years old and, therefore, within the age group protected by the ADEA. *See* 29 U.S.C. §§ 623 & 631. Clearly, he was adversely affected by Defendant's decision to terminate him.

Because Plaintiff's project engineer position was eliminated[2], "he must show that he

---

[2]Plaintiff argues that his position was not actually eliminated because his responsibilities continued to be performed by Al Ashe and Dale Hornsby. *See Plaintiff's Brief* at 14-15. *Cf. Rollins v. TechSouth*, 833 F.2d 1525 (11th Cir. 1987). However, Ashe and Hornsby were Plaintiff's supervisors prior to the RIF and saw their jobs eliminated as well. They were demoted from supervisory positions and assumed some of Plaintiff's former responsibilities. However, these facts do not support a *Rollins*-type conclusion that Plaintiff's position was not eliminated. One typical rationale for a RIF is the financial compulsion to reduce the number of employees despite the fact that the amount of work has not diminished. In the instant case, Plaintiff's former duties had to continue being performed, but Defendant could not afford to retain a separate employee for that purpose. Thus, the work was divided among other long-time employees of Defendant who were demoted but retained in the RIF. *Contra Rollins*. Thus, the facts do not support Plaintiff's contention that his position was not eliminated.

However, this court's ruling on the instant motion would be the same even if Plaintiff's position had not been eliminated because Plaintiff cannot demonstrate the third prong of his

was qualified for another available job with" Defendant. *Earley* at 1083. The only available job for which Plaintiff contends that he was qualified was the position of Electrical Project Engineer in the Alloys engineering department.[3] This job was not offered to Plaintiff. Rather, said position was filled by Eddie Johnson, an electrical engineer who's SRC position was eliminated by the consolidation. At all times relevant to this lawsuit, Johnson was younger than forty years of age. Thus, Plaintiff contends that Defendant violated the ADEA by refusing him the opportunity to fill the Electrical Project Engineer position before offering it to Johnson. *See* 29 U.S.C. §§ 623 & 631.

Plaintiff offers no evidence that he was *qualified* for the position. Indeed, it is undisputed that Plaintiff has a degree in civil engineering with work experience as a mechanical engineer. *Plaintiff's depo.* at 11, 38, 159. Additionally, Plaintiff admits that he only did "little minor [electrical engineering] stuff....nothing major". *Plaintiff's depo.* at 159-160. Plaintiff attempts to counter his lack of electrical engineering experience by arguing that the job description for the disputed position does not require a degree in electrical

---

*prima facie* ADEA case (*i.e.,* demonstration of discriminatory intent by Defendant). (*See* discussion *infra*.)

[3] In his brief, Plaintiff contends that "Defendant continued to hire younger employees" after the RIF. *Plaintiff's Brief* at 18. In support of this assertion, Plaintiff points to Kristy Olive (born April 9, 1973), hired as an industrial hygienist, and Mario Landesman (born December 6, 1965), hired as a senior maintenance technician. However, Plaintiff offers no evidence that he was qualified for either of these positions. Thus, said positions are irrelevant to the case at bar.
Interestingly, Plaintiff identifies three other employees who were newly hired. However, he never states for what positions these individuals were hired, much less any qualifications he has for their jobs.

engineering.[4] *See Plaintiff's Evidentiary Submission* at Tab 8. It is true that there is no line item in the description for an "electrical engineering degree". However, the position is clearly titled "electrical project engineer". The "responsibilities" section of the job description includes "Design ...complete systems of control; Supervise the overall engineering efforts for projects....; Supervise the contractors performing the field installation....; Supervise the training of plant production and maintenance personnel for newly installed equipment.; Supervise the issuance of all drawings, instruction, and maintenance manuals...; Propose and implement solutions to recurring operational and maintenance problems; Coordinate or conduct training programs for new or modified equipment." All of these responsibilities are in the context of *electrical* equipment and engineering. The job description continues by listing challenges of the position as "Application of highly technical, complex equipment to existing antiquated processed....; Maintaining knowledge of and familiarity with comstantly [sic] changing technology." Again, the equipment and technology is *electrical* in nature. Finally, the Job Description "Requires constant study and training." Clearly, this position required an individual capable of dealing with complex electrical engineering issues. Plaintiff never offers any evidence that he is qualified to do so.

In a final effort to demonstrate that he was qualified for the Electrical Project Engineer

---

[4]It is noteworthy that each page of the job description in question bears the statement "NOTE: This Job Description reflects the general nature and scope of the job. *This is not intended to be all inclusive.*" (emphasis added.)

position at the Alloys Plant, Plaintiff asserts that Defendant was willing to retrain James Farrell. Farrell had been the other project engineer at the ARP prior to the RIF. Farrell has a degree in electrical engineering and worked as an electrical engineer at ARP prior to the RIF. *Farrell's depo.* at 7; *Plaintiff's depo.* at 38. At the time of the RIF, Farrrell's ARP position was eliminated along with Plaintiff's. Because Farrell was an electrical engineer, he was qualified to move into an electrical engineering position with the Alloys/ARP/SRC complex. He considered the Electrical Engineer Position in question but did not think he was qualified enough to fill said position. *Farrell's depo.* at 13-14. Instead, he took an electrical engineering job in another area of the plant. During Farrell's deposition Plaintiff's attorney asked him:

> "Q. Did they tell you though if you were interested they were willing to give you whatever retraining was needed [for the Electrical Project Engineer position]?
>
> "A. We didn't even discuss that. I just told them I really wasn't interested in it."

*Farrell's depo.* at 14. Thus, there is no evidence that retraining was available for the disputed position. Plaintiff did not have the education, training, or experience necessary to fill the disputed position. Therefore, Plaintiff fails to meet the second prong of his *prima facie* case under the ADEA.

Even if Plaintiff had demonstrated that he was qualified for the Electrical Project Engineer position, plaintiff would still have to offer evidence "by which a fact finder might reasonably conclude that the employer intended to discriminate on the basis of age in

reaching the decision at issue." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1082 (11th Cir. 1990). Plaintiff has not done this. Eddie Johnson had a degree in electrical engineering and experience working in the field. Even if Plaintiff's background in civil and mechanical engineering qualified him for the disputed position, it is not reasonable to conclude that Defendant intended to discriminate by offering the Electrical Project Engineer position to an individual with a degree and experience in electrical engineering. Additionally, Defendant relocated other people from the ARP engineering department whose jobs were eliminated by the RIF. Most, if not all, of those people were over the protected age of forty. Thus, there is no evidence from which a reasonable fact-finder could conclude that Defendant intended to discriminate on the basis of age when the decision was made not to offer Plaintiff the position of Electrical Project Engineer in the Alloys Plant.

Plaintiff having failed to make out his *prima facie* case under the Age Discrimination in Employment Act, no genuine issue of material fact remains as to Count Two of Plaintiff's complaint. Summary judgment is due to be granted in favor of Defendant and against Plaintiff on said count.

## II.   ADA Claim

In addition to Plaintiff's complaint that he was discriminated against on the basis of his age, Plaintiff contends that Defendant discriminated against him by basing its decision to terminate him upon a disability in violation of the Americans with Disabilities Act ("ADA"). To establish a *prima facie* ADA case, Plaintiff must show that: (1) he has a

disability; (2) he was qualified to do the job from which he was terminated; and (3) he was discriminated against because of his disability. *Harris v. H&W Contracting Co.*, 102 F.3d 516, 519 (11th Cir. 1996). Since Plaintiff's job was entirely eliminated[5], he must demonstrate that he was qualified for another position within the company in order to demonstrate the second prong of the *prima facie* case. *See Verbraeken v. Westinghouse Elec. Corp.*, 881 F.2d 1041, 1045-1046 (11th Cir. 1989); *Earley v. Champion International Corp.*, 907 F.2d 1077, 1082 (11th Cir. 1990).

For purposes of the ADA, a "disability" is defined as: (A) a physical or mental impairment that substantially limits one or more of the major life activities of an individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment. 42 U.S.C. § 12102(2). Defendant disputes that Plaintiff has a disability. However, taking the facts in the light most favorable to Plaintiff, he had been suffering from sleep apnea and migraines for several years at the time of the RIF. At all times relevant to this lawsuit Plaintiff's sleep apnea was interrupting his sleep up to 50 times per minute during sleep. "[S]leeping is a major life activity....Sleeping is a basic activity that the average person in the general population can perform with little or no difficulty...." *Poindexter v. Atchison, Topeka & Santa Fe Railway Co..*, 168 F.3d 1228, 1231 (10th Cir. 1999) (citing *Pack v. KMart Corp.*, 166 F.3d 1300 (10th Cir 1999); *see also Colwell v. Suffolk County Police Dept.*,158 F.3d 635 (2nd Cir. 1998). Thus, in the light most favorable to Plaintiff, there is a genuine issue of

---

[5]*See* note 2, *supra*.

material fact regarding whether his sleep apnea constituted a disability under 42 U.S.C. § 12102(2)(A).

Plaintiff was qualified for the job from which he was terminated. However, in a reduction-in-force case such as this one, the job from which Plaintiff was terminated no longer exists.[6] Thus, Plaintiff must demonstrate that he was qualified for another available position at the time of the RIF. *See Verbraeken* and *Earley, supra*. Plaintiff is unable to meet this prong of his *prima facie* ADA case for the same reasons that he could not make the identical demonstration in the ADEA context. *See* discussion, *supra*. Thus, Plaintiff fails to make out his *prima facie* case of discrimination in violation of the ADA.

Even if Plaintiff were able to demonstrate the second prong of his *prima facie* case, summary judgment would still be due to be granted because Plaintiff has not produced evidence that the Defendant discriminated against him <u>because of</u> his disability. *See Harris v. H&W Contracting Co.,* 102 F.3d 516, 519 (11th Cir. 1996). In order for Plaintiff to show that he was intentionally discriminated against, the ADA requires a threshold showing that the person(s) who made the decision to fire Plaintiff had actual or constructive knowledge of his disability. *See Gordon v. E.L. Hamm & Assoc., Inc.* 100 F.3d 907, 910-911 (11th Cir. 1996). Plaintiff contends that the decision-maker(s) had constructive knowledge of his condition because his supervisors and co-workers had actual knowledge of his ailments. However, the undisputed evidence is that the supervisors who knew of his ailments had <u>no</u>

---

[6]*See* note 2, *supra*.

hand in who was terminated and who was not.[7] *See Ashe's depo.* at 20-21; *Hornsby's depo.* at 27; *Hester's depo.* at 8. Thus, Plaintiff fails to demonstrate that the decision-maker, Bobby Lee Quinton, had actual or constructive knowledge of Plaintiff's alleged disability at the time he made the decision to terminate Plaintiff. *See Affidavit of Bobby Lee Quinton* at ¶¶ 9, 11, & 14. Having failed to make said showing, Plaintiff cannot demonstrate the third prong of his *prima facie* case under the ADA (*i.e.,* that he was discriminated against <u>because of</u> his disability). *See Gordon v. E.L. Hamm & Assoc., Inc.* 100 F.3d 907, 910-911 (11th Cir. 1996); *Morisky v. Broward County*, 80 F.3d 445 (11th Cir. 1996).

Even if Plaintiff were able to make out his *prima facie* case of ADA violation, Defendant has offered legitimate, nondiscriminatory reasons for terminating Plaintiff. *See* 42 U.S.C. §12113 and 29 C.F.R. §1630.15. Defendant consolidated three plants that were within close geographic proximity in an effort to save money. As a part of said consolidation and in a further effort to economize its operations, Defendant engaged in the elimination of numerous salaried positions. Defendant contends that Plaintiff was simply one of those

---

[7]Bobby Lee Quinton made the RIF decisions that affected Plaintiff. *See Affidavit of Bobby Lee Quinton, Defendant's Evidentiary Submission* at Tab H. Plaintiff cites to Farrell's and Hornsby's depositions as evidence that individuals other than Quinton were involved in the disputed decisions. Farrell speculated that Al Ashe and unnamed others were involved in the decision. *See Ferrell depo.* at 11. However, Ashe testified that he had nothing to do with the decision. *Ashe depo.* at 20-21. Plaintiff also cites Hornsby who "estimated" that Lowell Held, Al Ashe, and Martin Hardy were involved in the decisions. *Hornsby depo.* at 18. Plaintiff fails to point out that Hornsby initially responded that he "honestly d[idn't] know" who made the relevant decisions. *Id.* He said that he "could guess, but ... [he had] no firsthand knowledge." *Id.* Only when Plaintiff's counsel asked him his "estimate" of who made the decision did he offer names. This is pure speculation and is not evidence that any of those individuals were involved in the decision to terminate Plaintiff.

salaried individuals whose position was eliminated.

In response to Defendant's legitimate, nondiscriminatory purpose for terminating Plaintiff, Plaintiff argues that the RIF was used as a pretext for purging disabled employees. However, Plaintiff produces no evidence in support of this argument. Rather, he merely lists names of those so terminated and allegations of various ailments from which each of these people suffered.[8] Even if this court was willing to accept this bald allegation as true, the mere existence of a medical condition is not the same as a disability as defined by the ADA. Thus, this argument has no merit.

No genuine issue of material fact remains as to Plaintiff's claim for violations of the Americans with Disabilities Act. Summary judgment is due to be granted in favor of Defendant and against Plaintiff on Count One of Plaintiff's complaint.

## III. *Breach of Contract Claim*

Lastly, the plaintiff alleges that the defendant breached its affirmative action program

---

[8]It is also suspect that Plaintiff bases his "purge" theory upon the medical conditions of several individuals whose own lawsuits against the same defendant have been adjudicated in favor of Defendant. *Harrison v. Reynolds Metals Co.*, CV No. 97-J-2256-NW (N.D. Ala.); *Barnes v. Reynolds Metals Co.*, CV No. 98-J-680-NW (N.D. Ala.); *Hannon v. Reynolds Metals Co.*, CV No. 97- HGD-2149-NW (N.D. Ala.) (aff'd 11th Cir. No. 98-6776, April 12, 1999); *Ballentine v. Reynolds Metals Co.,* CV No. 98-B-681-NW (N.D. Ala.) (bench ruling).

In addition, Plaintiff's list of those individuals who remained employed by Defendant after the RIF is erroneous in at least one aspect. *See Plaintiff's Brief* at 10. Plaintiff asserts that Dale Hornsby had no medical problems. However, Hornsby testified that he "had prostate cancer, and ... migraine headaches.... muscle tension headaches .... [and had his] gallbladder removed....on account of a peptic ulcer." *Hornsby depo.* at 15. Hornsby is still on medication for his migraines. *Id.* at 27.

which was a contract with the plaintiff. As this court understands this argument, the defendant is required to have an affirmative action program because it is a federal government contractor. *Plaintiff's Brief* at 20. However, Plaintiff cites no authority upon which this court could find that the affirmative action program became an enforceable contract between employer and employee.

Plaintiff apparently argues that because he alleged that he suffered from a disability, he was entitled to preferential treatment in the RIF. *Plaintiff's Brief* at 21. ("[N]o consideration was given to any possible disability Bernauer had at the time of the reduction in force.") This court can find no support for this proposition. Indeed, the Eleventh Circuit has stated:

> We cannot accept that Congress, in enacting the ADA, intended to grant preferential treatment for disabled workers.... "We do not read the ADA as requiring affirmative action in favor of individuals with disabilities, in the sense of requiring that disabled persons be given priority in hiring or reassignment over those who are not disabled. It prohibits employment discrimination against qualified individuals with disabilities, no more and no less."

*Terrell v. USAir*, 132 F.3d 621, 627 (11th Cir. 1998) (quoting *Daugherty v. City of El Paso*, 56 F.3d 695, 700 (5th Cir.1995)).

The plaintiff alleges no grounds for this court to have jurisdiction of this claim, or even if it is brought under state law or federal law. Assuming that it is a state law breach of contract claim, it is precluded by *Howard v. Uniroyal*, 719 F.2d 1552 (11th Cir.1983).

No genuine issue of material fact remains with regard to Plaintiff's breach of contract

-14-

claim. Therefore, summary judgment is due to be granted in favor of Defendant and against Plaintiff on Count Three of Plaintiff's amendment to complaint.

## Conclusion

Based upon the above analysis and in accordance with the separate order this day entered;

It is therefore **ORDERED** that Defendant's motion for summary judgment (doc. 22) be and hereby is **GRANTED**.

**DONE and ORDERED** this the __6__ day of __July__, 1999.

*Inge P. Johnson*
Inge P. Johnson
United States District Judge